**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

PIERRE WILLIAMS
    *Plaintiff,*

    v.

STEPHEN MILLIGAN, *et al.,*
    *Defendants*.

Civil No. ELH-25-1887

**MEMORANDUM OPINION**

This case arises from a workplace injury that occurred in April 2023, when plaintiff Pierre Williams, an employee of Pepsi Bottling Ventures, LLC ("Pepsi"), was struck by a forklift at a Pepsi warehouse located in Salisbury, Maryland. ECF 4.[1] Plaintiff has sued Alijah Butcher, the forklift operator, as well as Stephen Milligan,[2] the Plant Manager, and Richard McAllister, the Warehouse Manager. ECF 4, ¶¶ 2–5, 8–10.

The Amended Complaint is the operative pleading. ECF 4. Plaintiff asserts a claim of negligence against Butcher (Count III). *Id.* ¶¶ 37–41. According to plaintiff, Butcher was "traveling too fast, failed to stop at the intersection between Warehouse B and A, and failed to properly sound the horn." *Id.* ¶ 21.[3] As to Milligan and McAllister, plaintiff lodges claims of negligence (Count I) and negligent hiring, training, and supervision (Count II). In addition, he

Butcher answered the suit. ECF 24. But, Milligan and McAllister have moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 18. The motion is supported by a memorandum of law

---

[1] Jurisdiction is predicated on diversity of citizenship under 28 U.S.C. § 1332. ECF 4, ¶ 1.

[2] Plaintiff spells Milligan's first name as "Steven." ECF 4, ¶ 3. But, Milligan spells his name as "Stephen." *See* ECF 18 at 1. Accordingly, I will use Milligan's spelling.

[3] Plaintiff does not specify the injuries he sustained.

(ECF 18-2) (collectively, the "Motion").  Milligan and McAllister contend that they are protected from suit by the Maryland Workers' Compensation Act ("MWCA" or the "Act"), Md. Code (2025 Repl. Vol.), § 9-101 *et seq.* of the Labor and Employment Article ("L.E.").  *See* ECF 18-2 at 11.

Plaintiff opposes the Motion.  ECF 25 (the "Opposition").  He also seeks a hearing.  ECF 25-3.  Milligan and McAllister have replied.  ECF 28 (the "Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

## I.    Factual Background[4]

At the relevant time, Williams, Milligan, McAllister, and Butcher were all Pepsi employees, working at the same Pepsi plant in Maryland (the "Plant").    ECF 4, ¶¶ 7–10.  Plaintiff was a warehouse supervisor.  *Id.* ¶ 16.[5]

Milligan was the Production/Maintenance Manager, also referred to as the Plant Manager. *Id.* ¶ 8.  In this role, Milligan allegedly "was responsible for all plant maintenance, plant safety, employee training supervision and safety, including forklift operators training, supervision and safety."  *Id.*  Plaintiff claims that Milligan was also "responsible for the warehouse set up safety, and ensuring safe pedestrian and heavy equipment traffic flow within the warehouse."  *Id.*

McAllister was the Warehouse Manager.  *Id.* ¶ 9.  According to plaintiff, McAllister, like Milligan, was "responsible for all plant maintenance, plant safety, employee training supervision and safety, including forklift operator training, supervision and safety[,] . . .  warehouse set up safety, and ensuring safe pedestrian and heavy equipment traffic flow within the warehouse."  *Id.*

---

[4] As discussed, *infra,* at this juncture I must assume the truth of the facts alleged in the suit. *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019).  Therefore, the factual summary is derived largely from the Amended Complaint.

[5] Plaintiff does not specify his duties.

Butcher worked for Pepsi as a forklift operator. *Id.* ¶ 10. Plaintiff alleges that McAllister and Milligan trained and directed Butcher. *Id.* In addition, he alleges that Milligan and McAllister "were responsible for establishing and enforcing rules to ensure pedestrians were not at risk of being hit or run over by industrial traffic." *Id.* ¶ 17.

The Pepsi warehouse consists of three buildings, labeled "A", "B", and "P". *Id.* ¶ 11.[6] Warehouse A "is used for offices and some storage." *Id.* Warehouse B is "the original warehouse," and Warehouse P "was an addition added to Warehouse B." *Id.* All three buildings are used to store products "for production and distribution[.]" *Id.* "[F]orklifts and powered pallet jacks load and unload product from the truck receiving and distribution bays located in Warehouse P and then transport the product to and from assigned storage spaces in Warehouses A, B or P." *Id*. ¶ 12.

The three buildings "are connected to each other by narrow passageways used by both pedestrians and heavy duty powered industrial trucks, including forklifts and powered pallet jacks, for moving pallets of products." *Id.* ¶ 11. The employee bathroom is located in "Building B." *Id.* ¶ 12. Plaintiff's office was located in "Building A." *Id.*

Plaintiff asserts: "The plant was poorly designed and allows for employees, forklifts, and powered pallet jacks to all travel through the same narrow openings between Warehouse's [sic] A, B and P." *Id.* ¶ 13. In particular, he claims that "the opening through which pedestrian and heavy duty powered industrial trucks travel between Warehouse B and Warehouse P" was only "14 feet 5 inches wide." *Id.* And, according to plaintiff, "powered industrial trucks and pallet jacks operate between Warehouse B and Warehouse P" during times "when pedestrians" traveled through the same passageway. *Id.* ¶ 14. Moreover, he complains that "there are no safety markings to guild

---

[6] Plaintiff uses the words "building" and "warehouse" interchangeably.

[sic] pedestrian traffic or heavy-duty industrial equipment traffic[.]" *Id.* Further, plaintiff asserts that the "pedestrian walkways and industrial truck lanes were never marked at the facility." *Id.* ¶ 18. He also notes that there were no "safety mirrors" or "warning lights" for pedestrians. *Id.* ¶ 14.

Plaintiff alleges: "Employees are frequently required to walk between Warehouses A, B and P, alongside . . . the faster traveling industrial truck traffic[.]" *Id.* ¶ 15. He also claims that "employees must use the bathroom in Warehouse B, requiring them to walk through the narrow opening between Warehouses A, B and P." *Id.* And, he states: "Employees were exposed to being struck by powered industrial trucks numerous times per day." *Id.* ¶ 22; *see id.* ¶ 18. Further, he asserts: "The Warehouses in general are loud and the propane powered industrial trucks (forklifts and pallet jacks) are relatively quiet and although the industrial trucks are equipped with horns to warn of their movement, the horns are frequently not used." *Id.* ¶ 18; *see id.* ¶ 22. Moreover, he claims that there was a "rule against employees wearing earplugs and earphones" but it "was not enforced[.]" *Id.* ¶ 18.

According to plaintiff, "warehouse employees take a break from 1:30 pm until 1:45 pm." *Id.* ¶ 16. And, during that time, "no operations are permitted without permission from the warehouse supervisor (at the time the plaintiff was the warehouse supervisor), McAllister, the Warehouse Manager or Milligan, the Production/Maintenance Manager." *Id.* Williams recounts that during the break time on April 27, 2023, he "was walking in the designated but unmarked pedestrian pathway from the bathroom in Warehouse B to his office in Warehouse A." *Id.* ¶ 19. He asserts that, "[a]s he passed the passageway between Warehouse B and entered Warehouse A, he was struck without warning and partially run over by a forklift driven by Defendant Butcher." *Id.* Plaintiff states, *id.*: "No employee should have been operating heavy equipment during the break time which is a safe time."

As noted, Williams contends that Butcher "was traveling too fast, failed to stop at the intersection between Warehouse B and A, and failed to properly sound the horn." *Id.* ¶ 21. Prior to the occurrence, plaintiff "does not recall hearing a horn or other warning." *Id.* ¶ 19. Moreover, plaintiff alleges that "at all times" he was "walking 'normally,' paying proper attention to his surroundings and not negligent in his actions." *Id.* ¶ 20.

Further, plaintiff complains that, "pedestrian walkways and industrial truck lanes had not been properly marked, there were no safety mirrors, video, warning lights or other warnings to keep pedestrians traveling through passageways or next to the heavy industrial equipment safe." *Id.* ¶ 22; *see id.* ¶¶ 14, 18. He describes several safety measures that could have been implemented to protect pedestrians at the Plant, including "reconfiguring or providing mirrors or video so that industrial traffic and pedestrians could see each other at all times as they approached, entered, and exited the narrow passageway" and "a barrier" to separate "the pedestrian traffic from the industrial traffic." *Id.* ¶ 17.

## II.     Fed. R. Civ. P. 12(b)(6)

Plaintiff lodges claims against Plant Manager Milligan and Warehouse Manager McAllister for negligence (Count I) and negligent hiring, training and supervision (Count II). ECF 4, ¶¶ 23–36. [7]  Williams contends that the supervisory defendants, Milligan and McAllister,

---

[7] When, as here, state law claims are litigated in federal court based on diversity jurisdiction, federal courts apply federal procedural law and the substantive law of the state in which the proceeding is brought. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Leichling v. Honeywell Intern., Inc.*, 842 F.3d 848, 851 (4th Cir. 2016); *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *see also, e.g.*, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Prof'l Massage Training Cent., Inc. v. Accreditation Alliance of Career Schools and Colls.*, 781 F.3d 161, 180 (4th Cir. 2015); *Demetres v. E. W. Const. Inc.*, 776 F.3d 271, 273 (4th Cir. 2015); *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013); *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 652-53 (4th Cir. 2010). Maryland is, of course, the forum state. And, the substantive law of Maryland applies.

engaged in conduct that amounts to affirmative, direct acts of negligence toward Williams.  On this basis, plaintiff contends that the supervisory defendants do not enjoy the protection of the MWCA.

In general, to assert a claim of negligence in Maryland, the plaintiff must allege the following elements: "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of that duty." *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch. No. 40*, 469 Md. 704, 727, 233 A.3d 59, 72 (2020); *see, e.g., Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 611, 155 A.3d 445, 451 (2017); *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212–13, 60 A.3d 1, 10 (2013); *Schultz v. Bank of Am.*, N.A., 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010); *Jacques v. First Nat. Bank of Md.*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986)).

"Critically, the elements of negligent supervision are identical to the elements of a general negligence claim." *Marrick Homes LLC v. Rutkowski*, 232 Md. App. 689, 709, 161 A.3d 53, 65 (2017); *see Jones v. State*, 425 Md. 1, 18, 38 A.3d 333, 343 (2012) ("[T]he tort of negligent selection, training, or retention, like any negligence action, requires the plaintiff to prove the existence of four elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury; and (4) the injury proximately resulted from the defendant's breach."); *Fidelity First Home Mortg. Co. v. Williams*, 208 Md. App. 180, 198, 56 A.3d 501, 511 (2012) ("As in any action for negligence, a plaintiff asserting a cause of action for negligent supervision or retention must prove duty, breach, causation, and damages.").

"To state a claim for negligent hiring, training, or supervision, a plaintiff must show: '(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's

actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of plaintiff's injuries.'" *Karn v. PTS of America, LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022) (alteration in *Karns*) (citation omitted); *see Doe v. Bd. of Educ. of Anne Arundel Cnty.,* JRR-25-01703, 2026 WL 632377, at *8 (D. Md. Mar. 6, 2026) (same).

Defendants have moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF 18; ECF 18-2. A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *cert. denied*, 583 U.S. 1008 (2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013).

A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Thus, "a ruling under Rule 12(b)(6) presents a pure question of law[.]" *Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 221 (4th Cir. 2026).

The "court's role under Rule 12(b)(6) is to evaluate the sufficiency of a complaint . . . ." *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506, 513 (2002).  Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see Brown-Hyatt v. Brenner*, SAG-25-1737, 2025 WL 2855769, at *2 (D. Md. Oct. 8, 2025) (same).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'"); *see also Rice v. Adams,* __ F.4th __, 2026 WL 996964, at *2 (4th Cir. Apr. 14, 2026); *United States ex rel. Sheldon v. Allergan Sales, LLC*, 170 F.4th 227, 242 (4th Cir. 2026); *L.M. by Roe #1 v. Graham*, 168 F.4th 196, 200 (4th Cir. 2026); *Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 814 (4th Cir. 2026); *Harmon v. Coleman Worldwide Moving, LLC*, 2025 WL 3764220, at *1 (4th Cir. Dec. 30, 2025) (per curiam); *Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025); *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025); *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021); *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  A plausible claim is one that is more than merely conceivable or speculative.  *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *see Sheldon*, 170 F.4th at 242.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—

but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Here, the Rule 12(b)(6) challenge is intertwined with arguments based on the MWCA, discussed *infra*.

As the Fourth Circuit has recognized, plaintiffs are not required "to prove [their] case in the complaint." *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) (recognizing that "[t]he requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at [her] disposal at the outset"); *see Lowy v. Daniel Defense, LLC,* 167 F.4th 175, 193 (4th Cir. 2026).  Furthermore, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  Indeed, it is "error" for a district judge to give "a serious claim the back of its hand" because it does not believe the plaintiff's allegations. *See Colon Health Ctrs. of Am., LLC v. Hazel,* 733 F.3d 535, 545 (4th Cir. 2013).

Rather, in considering a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Env't Hydrogeological Consultants, Inc. v. N. Am. Risk Servs., Inc.,* 2026 WL 674349, at *2 (4th Cir. Mar. 10, 2026); *Cooper v. City of Wheeling*, 169 F.4th 220, 223 (4th Cir. 2026); *Walls v. Prince George's Cnty.*, 2026 WL 497988, at *1 (4th Cir. Feb. 23, 2026) (per curiam); *Johnson*, 163 F.4th at 814; *Bermeo v. Andis*, 163 F.4th 87, 93 (4th Cir. 2025)*; Hebb v. City of Asheville, N. Carolina,* 145 F.4th 421, 432 (4th Cir. 2025); *Barbour v. Garland,* 105 F.4th 579, 589 (4th Cir. 2024); *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d

473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010). Nor does the court accept "'legal conclusions couched as facts . . . .'" *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation omitted).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). "Mere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022); *see Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021). That said, a plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted); *see Johnson v. Navy Fed. Credit Union*, 2025 WL 2437832, at *2 (4th Cir. Aug. 25, 2025) (per curiam).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678; *see Katti v. Arden*, 161 F.4th 217, 224 (4th Cir. 2025). Instead, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

Ordinarily, when ruling on a Rule 12(b)(6) motion, a court does not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023); *Bing v. Brio Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear [ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*,

780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448); *see Goines*, 822 F.3d at 166 (citation omitted) (a court may properly consider documents that are "explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits"); *see also Redding v. Noem,* 168 F.4th 203, 205 (4th Cir. 2026); *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Under limited circumstances, however, a court may consider documents beyond the complaint, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits[.]" *Goines,* 822 F.3d at 166; *see* Fed. R. Civ. P. 10(c). A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see Finn v. Humane Soc'y of the United States*, 160 F.4th 92, 96 n.2 (4th Cir. 2025); *Doriety,* 109 F.4th at 679; *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Carrington Sturgis v. Warden Jeff Nines*, SAG-25-841, 2025 WL 3240039, at *2 (D. Md. Nov. 20, 2025); *Moody v. The Board of Education of Wicomico* County, SAG-25-00642, 2025 WL 3119201, at *4 (D. Md. Nov. 7, 2025). To be

"integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in *Chesapeake Bay Found., Inc.*) (citation omitted); *see Brentzel v. Fairfax Transfer and Storage, Inc.,* 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021) (per curiam).

Notably, a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing. *See, e.g.*, *Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not included in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

### III.   The MWCA

Defendants Milligan and McAllister contend that plaintiff's negligence claims are precluded by the MWCA. ECF 18-2 at 11.

The MWCA, first enacted by the Maryland legislature in 1914, was "created to efficiently and uniformly handle employment injury claims, ensuring that employees and their families could receive swift compensation without a burdensome gap in income, and employers could provide that compensation without fear of costly negligence suits." *Ledford v. Jenway Contracting, Inc.*,

490 Md. 666, 679, 338 A.3d 563, 571 (2025); *see Polomski v. Mayor & City Council of Baltimore*, 344 Md. 70, 77, 684 A.2d 1338, 1341 (1996).  The Act "'embodies a comprehensive scheme to withdraw all phases of extra-hazardous employments from private controversy and to provide sure and certain relief for injured workmen, their families and dependents regardless of questions of fault.'"  *Hastings v. Mechalske*, 336 Md. 663, 672, 650 A.2d 274, 279 (1994) (quoting *Athas v. Hill*, 54 Md. App. 293, 297, 458 A.2d 859, 862 (1983), *aff'd*, 300 Md. 133, 476 A.2d 710 (1984)); *see Ledford*, 490 Md. at 680, 338 A.3d at 571; *Pennsylvania Manufacturers Ass'n v. Cree*, 259 Md. App. 179, 199, 302 A.3d 1141, 1153 (2023); *Board of Education of Prince George's County v. Marks-Sloan*, 428 Md. 1, 35–36, 50 A.3d 1137, 1157–58 (2012).

Pursuant to the Act, compensation is paid to an employee "for loss of earning capacity, regardless of fault, resulting from accidental injury, disease, or death occurring in the course of employment."  *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 437, 677 A.2d 73, 75 (1996); *see* L.E. §§ 9-101(b), 9-501, 9-502; *see also Means v. Baltimore County*, 344 Md. 661, 664, 689 A.2d 1238, 1239 (1997); *Barnes v. Children's Hosp.*, 109 Md. App. 543, 553, 675 A.2d 558, 563 (1996). In this way, the Act "replaced common law negligence actions by injured employees against their employers with a system of quick and certain compensation for injuries sustained during the course of employment."  *Plater v. UE&C Catalytic, Inc.*, HM-92-466, 1992 WL 414814, at *2 (D. Md. Oct. 14, 1992); *see Athas v. Hill,* 300 Md. 133, 139, 476 A.2d 710, 713 (1984).

Claims under the Act are adjudicated by the State Workers' Compensation Commission (the "Commission").  *Matter of Collins*, 468 Md. 672, 685, 228 A.3d 760, 767 (2020).  As an "independent entity of the Maryland state government, the Commission conducts proceedings and investigations relating to workers' compensation claims."  *Id.*

Ordinarily, under L.E. § 9-509, compensation pursuant to the Act is an injured employee's exclusive remedy with respect to the employer. *See, e.g., Ledford,* 490 Md. at 674, 338 A.3d at 568; *see also The Great Atl. & Pac. Tea Co., Inc. v. Imbraguglio*, 346 Md. 573, 578, 697 A.2d 885, 887 (1997); *Tynes v. Shoney's, Inc.,* 867 F. Supp. 330, 332 (D. Md.1994). "'Compensation awarded on this fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury . . . .'" *Matter of Collins*, 468 Md. at 686, 228 A.3d at 767–68 (quoting *DeBusk,* 342 Md. at 438, 677 A.2d at 75); *see Belcher v. T. Rowe Price,* 329 Md. 709, 736, 621 A.2d 872, 885 (1993); *Wagner v. Allied Chem. Corp.,* 623 F. Supp. 1412, 1414 (D. Md. 1985).[8]

As the Maryland Supreme Court has colorfully said, "the General Assembly enshrined the lynchpin of the Grand Bargain in the Act's exclusivity provision, L&E § 9-509, which details both the limitations on an employer's liability and an employee's right to compensation." *Ledford,* 490 Md. at 680, 338 A.3d at 571. The court explained: "'The rationale behind the exclusivity rule is that the employer has undertaken the burden of supplying workmen's compensation insurance in return for immunity from suit.'" *Id.* (cleaned up) (some internal quotation marks and citations omitted); *see Marks-Sloan*, 428 Md. at 36, 50 A.3d at 1158 ("With certain limited exceptions, the Workers' Compensation Act is a substitute for the employer's common law liability for

---

[8] Prior to the enactment of the MWCA, "the liability of an employer for injuries sustained by an employee in the course of his employment was limited." *Athas,* 300 Md. at 138, 476 A.2d at 712. "The limitations on the employer's liability stemmed primarily from . . . common law defenses: contributory negligence, assumption of risk, and the fellow servant rule." *Id.* Under the fellow servant rule, "[t]o hold the fellow servant liable for negligence at common law, the injured employee was required to establish that the fellow servant occupied the role of a vice principal." *Id.* at 138, 476 A.2d at 713. In general, the "employer was held liable for the negligence of an employee only if the employee exercised responsibility, control, direction, and authority with respect to the work place." *Id.* And, "[a]mong the nondelegable duties which the employer owed his employees was the duty to provide a safe place to work[.]" *Id.* at 139, 476 A.2d at 713.

negligence, subject to his common law defenses, and creates an absolute, but limited, liability regardless of fault, such liability upon a conforming employer being exclusive.") (Internal quotations omitted).

The "*quid pro quo*" for absolute, swift, but limited compensation to employees, without regard to fault, is that employers are "relieved of the prospect of large damage verdicts."  Arthur Larson, 9 *Larson's Workers' Compensation Law* (2026), § 100.01.   The Act also benefits employers by enabling them to avoid "the disruption of business by burdensome lawsuits." *Central GMC, Inc. v. Lagana,* 120 Md. App. 195, 204, 706 A.2d 639, 644 (1998).

The exclusivity provision, codified in L.E. § 9–509, is titled "Exclusivity of compensation."  It states (emphasis added):

(a) Except as otherwise provided in this title, *the liability* of any employer under this title is *exclusive.*[9]

(b) Except as otherwise provided in this title, the compensation provided under this title to a covered  employee or the dependents of a covered employee *is in place of any right of action against any person.*

(c)(1) If an employer fails to secure compensation in accordance with this title, a covered employee who has sustained an accidental personal injury, compensable hernia, or occupational hernia, or occupational disease or, in case of death, the personal representative of the covered employee may:

---

[9] Some courts have said that the MWCA immunizes an employer from suit, while others have said that the Act immunizes an employer from liability. *See, e.g., Great Atl. & Pac. Tea Co., v. Imbraguglio*, 346 Md. 573, 578, 697 A.2d 885, 887–88 (1997) ("Under [The MWCA] . . . employers are *immune . . . from suit* by their employees for work-related injuries.") (Emphasis added); *Hastings v. Mechalske,* 336 Md. 663, 673, 650 A.2d 274, 279 (1994) (stating that under the MWCA, "proof that the defendant is a third party tort-feasor, who was not acting on behalf of the employer, *will preclude a finding that the defendant is immune from suit*.") (Emphasis added); *Athas,* 300 Md. at 149, 476 A.2d at 718 ("[I]f a supervisory employee commits an affirmative, direct act of negligence toward an employee, and therefore negligently breaches a personal duty of care which is reasonably owed by him to the fellow employee, *then he would not be immunized from liability*.") (Emphasis added); *Lumpkins v. United States*, 212 F. Supp. 2d 464, 468 (D. Md. 2002) ("Since the worker's sole remedy against the statutory employer is a claim under the MWCA, *the employer is considered to be immune from suit at law*.") (Internal quotation marks and citation omitted) (Emphasis added).

> (i)    bring a claim for compensation under this title; or
> (ii)    bring an action for damages.
>
> (2) In an action of a covered employee or personal representative under this subsection, an employer may not plead as a defense that:
>
> (i)    the covered employee assumed the risk of employment;
> (ii)    the covered employee was contributorily negligent; or
> (iii)    the negligence of a fellow servant caused the accidental personal injury, compensable hernia, or occupational disease.
>
> (d) If a covered employee is injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee, the covered employee or, in the case of death, a surviving spouse, child, or dependent of the covered employee may:
>
> (1) bring a claim for compensation under this title; or
>
> (2) bring an action for damages against the employer.

Although recovery pursuant to the Act is ordinarily an employee's "sole recourse" as against the employer, *Imbraguglio,* 346 Md. at 578, 697 A.2d at 888, the Act preserves the employee's right to bring suit against the employer for damages under certain circumstances.  In particular, to obtain the protection of the Act, "an employer must 'secure compensation in accordance with' the Act, *id.* § 9-509(c), and the injury to the employee must not have been caused by the employer's deliberate act, *id.* § 9-509(d)." *Ledford*, 490 Md. at 674, 338 A.3d at 568; *see also Ledford v. Jenway Contracting, Inc*., 259 Md. App. 534, 545, 305 A.3d 498, 504 (2023) (describing L.E. §§ 9-509(c) and (d) as the "two exceptions" to "[t]he Act's exclusivity provision"), *aff'd,* 490 Md. 666, 338 A.3d 563 (2025); *but see Ruffin Hotel Corp. of Maryland v. Gasper*, 418 Md. 594, 617, 17 A.3d 676, 689 (2011) (refusing to grant an employer immunity under the MWCA when an employee lodged a negligent hiring/retention claim against her employer as a result of intentional and unlawful misconduct of a fellow employee).

However, "absent an explicit exception in the Act, no other statutory provision can expand or shrink either an employer's liability or an employee's rights." *Ledford*, 490 Md. at 682, 338 A.3d at 572.  Indeed, the Maryland high court has interpreted L.E. § 9-509 unambiguously to limit "a compliant employer's liability for a covered employee's work-related injuries or death" to "what is provided in the Act itself" and nothing "further[.]" *Id.* at 688, 338 A.3d at 576.  "In other words, when a covered employee is injured within the scope of their employment, the exclusivity clause is triggered, such that an employer's liability is automatically limited to the remedies and exclusions found within the Act itself." *Id.* at 689, 338 A.3d at 576–77.

Notably, the Act "neither excuses third-parties from their own negligence nor limits their liability." *Imbraguglio*, 346 Md. at 583, 697 A.2d at 890.  When a worker is injured due to the negligence of a third-party, L.E. § 9-901 provides the injured employee with the option of 1) filing a compensation claim against the employer to recover benefits under the Act or 2) instituting a third-party damages action against the tortfeasor.  *Id*.; *see Hastings*, 336 Md. at 672, 650 A.2d at 279 ("Where a person other than the employer is liable for an employee's death or injuries, for which compensation is payable, the employee may file a claim for compensation against the employer or bring an action for damages against the liable third party.")

If an employee is awarded compensation under the MWCA, "a self-insured employer, an insurer, the Subsequent Injury Fund, or the Uninsured Employers' Fund may bring an action for damages against the third party who is liable for the injury or death of the covered employee." L.E. § 9-902(a).  In other words, if "the employee's injury resulted from the tortious conduct of a third-party, the statute grants the employer[]the right to sue the third-party to recover an amount equal to the benefits the employer has been required to pay the employee because of the injury. *See* LE § 9–902(a) and (b)[.]" *Franch v. Ankney*, 341 Md. 350, 358, 670 A.2d 951, 954 (1996).

The *Franch* Court explained, *id.* at 358, 670 A.2d at 955:

The employer has the exclusive right to pursue a cause of action against the third-party tortfeasor for two months. LE § 9–902(c); [*Erie Ins. Co. v. Curtis*, 330 Md. 160, 164, 623 A.2d 184, 186 (1993)]. Thereafter, the employee also has the right to bring an action against the third-party, but the employer retains subrogation rights in the employee's claim. *Erie,* 330 Md. at 164, 623 A.2d at 186. The employer's subrogation interest in the third-party claim acts as a "statutory lien" on any recovery the employee may obtain from the third-party. Richard P. Gilbert and Robert L. Humphreys, Jr., Maryland Workers' Compensation Handbook § 16.1–5, at 325 (2d ed. 1993, 1995 Cum.Supp.). In other words, if the employee recovers compensation from the third-party tortfeasor, the employer is entitled to obtain reimbursement for its workers' compensation payments from the proceeds. *See* LE § 9–902(e).  Where recovery from the third party is less than the employee is entitled to receive in benefits, the employee retains the right to recover the difference between the amount received from the third party and the amount payable under the statute. *See* LE §§ 9–902, 9–903; *see also Brocker Mfg. v. Mashburn,* 17 Md. App. 327, 301 A.2d 501 (1973).

Of relevance here, "a covered employee's ability to sue a third party for damages arising from the employee's injury includes coemployees of the injured party." *Hayes v. Pratchett*, 205 Md. App. 459, 466, 45 A.3d 861, 866 (2012).  "Although LE § 9–901 does not preclude tort actions between coemployees, it does exclude an action in tort by an employee against his employer." *Id*. And, of import, the employer's "immunity from suit can extend to supervisory coemployees when the supervisor is performing a nondelegable duty of the employer." *Id.* at 467, 45 A.3d at 866.

In effect, a supervisory coemployee stands in the shoes of the employer if, in the course of employment, the coemployee was performing a nondelegable duty of the employer to maintain a safe workplace.  "In the context of employee suits against supervisory coemployees for breaching an employer's nondelegable duty to provide a safe workplace," the coemployee enjoys the immunity of the employer.  *Beasley v. Bernard*, DKC-23-3133, 2024 WL 326952, at *4 (D. Md. Jan. 29, 2024); *see Marks-Sloan*, 428 Md. at 44, 50 A.3d at 1162 ("[A] supervisory co-employee is not contemplated as a third party subject to a tort suit [if] the supervisory co-employee enjoys the employer's immunity"); *Hayes,* 205 Md. App. at 467, 45 A.3d at 866.

However, "if a supervisory employee commits an affirmative, direct act of negligence toward an employee, and therefore negligently breaches a personal duty of care which is reasonably owed by him to the fellow employee, then [the employee] would not be immunized from liability." *Athas,* 300 Md. at 149, 476 A.2d at 718. In that circumstance, the employee is not performing a nondelegable duty of the employer.

Therefore, "in order for a supervisory coemployee to avoid liability under the Act, at the time of the accident, the supervisor must be: (1) performing a nondelegable duty of the employer; and (2) acting within the course of his or her employment." *Hastings*, 556 Md. at 676, 650 A.2d at 280; *see Hayes*, 205 Md. App. at 472, 45 A.3d at 869 (same). And, the matter of "workmen's compensation as an exclusive remedy" is "an affirmative defense." *See*, *e.g.*, *Gilbert Washington Suburban Sanitary Comm'n*, 304 Md. 658, 661, 500 A.2d 1039, 1041 (1985).

As to the first prong, "[i]n Maryland, an employer owes a nondelegable duty to provide a safe workplace for its employees." *Sanders v. Mapco, Inc.,* 829 F.2d 36, at *2 (4th Cir. 1987) (per curiam) (unpublished table decision); *see Beckwitt v. State*, 477 Md. 398, 438, 270 A.3d 307, 330 (2022) ("In Maryland, it is a longstanding principle that an employer owes an employee the duty to provide a reasonably safe place to work."); *Athas,* 300 Md. at 148, 476 A.2d at 718 ("[T]he duties to provide a safe place to work . . . have always rested on the employer."). This duty encompasses routine work assignments and supervision, retaining competent, non-violent employees, issuing safe equipment, furnishing proper tools and machinery, and controlling employees. *Hastings*, 336 Md. at 677, 650 A.2d at 281 (citing cases).

The second prong requires work in the course of employment. "[T]he words 'in the course of' employment essentially refer to the time, place, and circumstances under which an injury occurred." *Hastings,* 336 Md. at 677, 650 A.2d at 281; *see Roberts v. Montgomery Cnty.*, 436 Md.

591, 604, 84 A.3d 87, 95 (2014); *In the Matter of Clarence Johnson*, No. 1902, Sept. Term,2024, 2026 WL 1004182, at *5 (Md. Ct. Spec. App. Apr. 14, 2026).

Notably, the Act "is to be construed liberally to achieve its remedial purpose." *Westfield Ins. Co. v. Gilliam*, 477 Md. 346, 357, 269 A.3d 1047, 1053 (2022); *see Ledford*, 490 Md. at 681, 338 A.3d at 572. Nevertheless, a court "must exercise judicial restraint and 'avoid stif[ling] the plain meaning of the Act . . . so that the injured worker may prevail.'" *Ledford*, 490 Md. at 681, 338 A.3d at 572 (quoting *Montgomery Cnty. v. Deibler*, 423 Md. 54, 61, 31 A.3d 191, 195 (2011)) (alteration in *Ledford*).

### IV. The Contentions

Defendants advance the unremarkable proposition that the "Maryland Workers' Compensation Commission maintains jurisdiction over claims in which the [injured] employee is a 'covered employee' within the context of the [MWCA]." ECF 18-2 at 7 (citing *Pro-Football, Inc. v. McCants,* 428 Md. 270, 280, 51 A.3d 586, 592 (2012)). And, they posit that plaintiff "is a covered employee" under the Act because he was a Pepsi employee. ECF 18-2 at 11.

It is clear that plaintiff is a covered employee under the Act. *See* L.E. § 9-101(f). L.E. § 9-202(a) provides that an individual "is presumed to be a covered employee while in the service of an employer under an express or implied contract of apprenticeship or hire." Nor does Williams "dispute that workers' compensation is the exclusive remedy directly against his employer, Pepsi . . . ." ECF 25-1 at 6.

The dispute here concerns the conduct of defendants, who are supervisory coemployees. They argue: "Each and every allegation by Plaintiff against Defendants in the Amended Complaint is grounded on the premises that Defendants failed to keep Plaintiff's place of employment reasonably safe[.]" ECF 18-2 at 11; *see* ECF 28 at 3. According to defendants, this "is an

indisputable nondelegable duty of Defendants' (and Plaintiff's) employer at the time of the occurrence." ECF 18-2 at 11. Moreover, defendants contend that plaintiff has "failed to plead any affirmative act of negligence" by the supervisory defendants. ECF 28 at 4.

Therefore, defendants insist that "there is no legal basis for the claims against [them]." ECF 18-2 at 11. Rather, they argue that the MWCA is the "the exclusive remedy for an employee seeking compensation for an injury sustained as the result of an employer's liability." *Id*. at 8.

Plaintiff agrees that "mere supervision of other employees may be considered performing the employer's non-delegable duty" and thus would shield a coemployee from liability. ECF 25-1 at 8. Nevertheless, Williams maintains that Milligan and McAllister "engaged in affirmative, direct acts of negligence [as to plaintiff] and were not performing non-delegable duties of the employer at the time" plaintiff was injured. *Id.* at 1. Accordingly, he posits: "Defendants are not immune under the MWCA because their acts were affirmative and not employer's non-delegable duties." *Id.*

In particular, plaintiff argues that the actions of Milligan and McAllister "went beyond general supervision." *Id.* at 8. He points to the following acts that he claims Milligan and McAllister *personally* undertook, *id.* at 8–9:[10]

- Permitted employees to walk and work around powered industrial trucks and power pallet jacks without marked pedestrian walkways and designated lanes for powered industrial trucks

- Failed to establish and enforce safety rules

- Failed to establish speed limits and mandatory stop locations

- Failed to clearly mark lanes of travel for industrial equipment and pedestrians

---

[10] Plaintiff alleges that he was a warehouse supervisor. *See*, *e.g.*, ECF 4, ¶ 16. But, he never articulates his duties. Therefore, it is conceivable that at least some of the conduct that plaintiff attributes to Milligan and McAllister as direct acts of negligence were also applicable to plaintiff, given his status as a warehouse supervisor.

- Failed to install mirrors or video that would allow pedestrians and equipment operators to see each other (in blind spots)

- failed to enforce no earplugs or iPod use

- Failed to enforce rules designed to keep pedestrians from coming in contact with heavy industrial equipment

- Failed to require horn use

- Failed to hire trained forklift operators or to train and supervise forklift operators

- Authorized and permitted operation of forklifts, including Butcher, during the 1:30–1:45 p.m. break period, despite knowing operations were prohibited during this period and despite being responsible for enforcing that rule

- Failed to enforce mandatory horn-use rules and allowed operators not to use horns, despite knowing the dangers and being directly responsible for supervision and enforcement

- Failed in the design and traffic flow of forklifts, including lane configurations, traffic patterns, and visibility aids

- Failed to properly train and supervise heavy equipment operators including Butcher.

According to plaintiff, "[t]hese are all affirmative operations, conduct and decisions by Defendants, not general supervision." *Id.* at 9.  He argues that "personally directing an employee to engage in dangerous activity, altering how work is performed, personally directing the particular operation to be done in a particular manner, and increasing the hazard by direct operation decision" are all "examples of actionable affirmative negligence[.]" *Id.* at 9–10 (citing *Athas*, 300 Md. at 145–46, 476 A.2d at 716–17).

As plaintiff puts it, defendants' "affirmative decisions not to set up designated lanes of travel etc. and to stray from company policies and procedures and allow unsafe conditions to exist created the precise risk of injury that befell Plaintiff." *Id.*  Therefore, plaintiff reasons that Milligan and McAllister are not protected under the MWCA.

## V.    Discussion

### A.

Under Maryland law, when an employee acts in a supervisory capacity in the course of employment and exercises a nondelegable duty of the employer, such as maintaining a safe workplace, the supervisory employee who negligently discharges that duty is nonetheless entitled to MWCA immunity. *See, e.g., McHugh v. Mayor of Baltimore*, BPG-09-1214, 2011 WL 1135853, at \*13 (D. Md. Mar. 24, 2011) ("Since [defendants] were acting as supervisors when they allegedly negligently discharged the City's nondelegable duty to provide plaintiff a safe place to work, they are entitled to the benefit of the City's immunity under *Athas*."), *aff'd sub nom. McHugh v. Mayor & City Council of Baltimore*, 470 F. App'x 198 (4th Cir. 2012).

It is clear that the actions of Milligan and McAllister were undertaken in the course of employment.  Plaintiff does not contend otherwise.  Rather, the dispute here pertains to whether the alleged negligence of the defendants falls under the protective umbrella of a nondelegable duty of the employer, thereby rendering defendants immune from liability or, instead, amounts to direct, affirmative, negligent acts, which would take defendants outside the protection of the Act.

*Athas*, 300 Md. 133, 476 A.2d 710, is a touchstone case with regard to supervisory coemployee liability under the MWCA.  In that case, the Mayland Court of Appeals[11] was "faced with the question of whether" the MWCA "authorizes an employee to sue a supervisory

---

[11] In the general election held in Maryland in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland.  And, the voters also approved a change in the name of the State's intermediate appellate court, from the Maryland Court of Special Appeals to the Appellate Court of Maryland.  These changes went into effect on December 14, 2022.  *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR.  However, I shall refer to the courts by the names that were in effect when the cited decisions were issued.

coemployee for negligently discharging the employer's duty to provide a safe place to work." *Id.* at 134, 476 A.2d at 710–11.

The plaintiff in *Athas* worked as a busboy at a country club. *Id.* at 134, 476 A.2d at 711. The country club employed a chef who had a "violent disposition[.]" *Id.* at 135, 476 A.2d at 711. He attacked the busboy with a butcher knife, disfiguring the busboy's face and permanently disabling him. *Id.* Plaintiff "filed for and was awarded compensation from" his employer "under the Workmen's Compensation Act." *Id.* The plaintiff also filed suit against the chef for assault and obtained a monetary judgment against the chef. *Id.* In addition, the plaintiff sued several corporate officers, including the country club's president and managing agent, vice president, and house chairmen, alleging that they "were negligent in that each failed to exercise due care in providing [plaintiff] with a safe place to work." *Id.*

The court referred to the corporate officers as supervisory coemployees. *Id.* at 135, 140, 148, 476 A.2d at 711, 714, 718. Their duties included "hiring, discharging, and disciplining employees . . . providing employees with a reasonably safe place to work; warning and instructing employees concerning the dangers of the work place about which [the employer] knew or should have known and which the  employees could not reasonably have discovered; and exercising reasonable care and caution in the selection and employment of competent, nonviolent employees." *Id.* at 135, 476 A.2d at 711.

The plaintiff claimed that the corporate defendants "had notice of" the chef's "violent disposition" because of "his record prior to employment with [the country club] and his involvement in various altercations on the club's premises since employment." *Id.* Accordingly, plaintiff claimed that the defendants "failed to insure [plaintiff's] safety by continuing to employ" the chef. *Id.* The corporate defendants conceded that they negligently discharged the employer's

duty to exercise reasonable care in hiring and retaining nonviolent employees. *Id.* at 136, 476 A.2d at 711. Nevertheless, they argued that "they [we]re not subject to personal liability" because the breach at issue was "the employer's duty." *Id.* The trial court agreed. *Id.* at 136, 476 A.2d at 712.

On certiorari to the Maryland Court of Appeals, the *Athas* Court "conclude[d] that supervisory coemployees may be subject to liability only for negligently breaching a duty of care which they personally owe to the employee." *Id.* at 134, 476 A.2d at 711. But, "under the workmen's compensation scheme as well as under the common law, the supervisory employee should not be held liable for breaching a duty such as providing a safe place to work." *Id.* at 149, 476 A.2d at 718. And, said the court, "the duties to provide a safe place to work and to retain competent, nonviolent employees have always rested on the employer." *Id.* at 148, 476 A.2d at 718. The *Athas* Court reasoned that "a supervisory coemployee who performs the nondelegable duty of the employer does not thereby assume a personal duty toward his fellow employees." *Id.* In that circumstance, the employee is entitled to the same immunity afforded to an employer under the MCWA. *Id.*

As to the corporate defendants in *Athas*, the court determined that they were supervisory coemployees who "were responsible for discharging [the country club's] duty to provide [plaintiff] with a safe place to work and to retain only competent, nonviolent employees." *Id.* at 149, 476 A.2d at 718. It stated: "In undertaking such managerial and personnel functions, the officers assumed an obligation to the employer only . . . . The acts of the corporate officers and agents here cannot be separated from that of the corporation." *Id.*

Moreover, the court was of the view that "the defendants did not commit any affirmative, direct act of negligence toward [plaintiff]." *Id.* The court explained that "if indeed the officers

knew of [the chef's] involvement in altercations while employed at the club and did nothing about this behavior, then they merely breached the duty of providing a safe place to work which [the country club] owed to [plaintiff]." *Id.* at 150, 476 A.2d at 719. Therefore, the court concluded that "these supervisory employees cannot be held liable for negligently performing the employer's nondelegable duties." *Id.* at 149, 476 A.2d at 718.

*Hastings*, 336 Md. 663, 650 A.2d 274, also provides guidance. There, the plaintiff was working as a general contractor at a construction worksite to build a loading dock and modify structures at a business center. *Id.* at 668–69, 650 A.2d at 277. Defendant was the foreman superintendent. *Id.* at 669, 650 A.2d at 277. He assigned another worker on the project to use a backhoe[12] to break up old concrete in an electrical pit. *Id.* at 669, 650 A.2d at 277. The worker assigned to use the backhoe "had little experience using a backhoe of this type and . . . his last use of any kind of backhoe was nearly a decade earlier." *Id.* The worker operating the backhoe hit a scaffold at the worksite and plaintiff "was knocked twenty-five to thirty feet to the ground and injured." *Id.* at 670, 650 A.2d at 277.

The plaintiff sued numerous defendants, including the foreman who assigned the worker to operate the backhoe. *Id.* at 670, 650 A.2d at 277–78. As to the foreman, plaintiff sought recovery under the theory that the foreman had negligently entrusted the backhoe to the worker. *Id.* at 670, 650 A.2d at 278. At the conclusion of plaintiff's case, "motions for judgment were granted as to all defendants except [the worker who operated the backhoe], against whom judgment was rendered in favor of the [plaintiff] by default." *Id.*

---

[12] A "backhoe" is "an excavating machine having a bucket that is attached to a rigid bar hinged to a boom and that is drawn toward the machine in operation[.]" *Backhoe,* MERRIAM-WEBSTER DICTIONARY (last accessed Apr. 7, 2026), https://perma.cc/4CXC-8RL6.

On appeal, the plaintiff argued that the foreman was "not entitled to the immunity of a supervisory coemployee." *Id.* at 668, 650 A.2d at 276. Specifically, the plaintiff claimed that although the foreman was "managing and supervising, pursuant to a delegation of authority, the affairs of his employer, the [foreman] committed against [plaintiff] the affirmative and direct act of negligently delivering to [the worker operating the backhoe] possession and control a dangerous instrumentality, which he knew, or should have known, [the worker] was not competent to operate safely." *Id.* Accordingly, plaintiff claimed that the foreman "breached a personal duty owed to the [plaintiff], over and above any duty that may have been owed to his employer." *Id.* at 670–71, 650 A.2d at 278.

The *Hastings* Court reviewed its analysis in *Athas*, 300 Md. 133, 476 A.2d 710, at length. *Hastings,* 336 Md. at 673–76, 650 A.2d at 279–80. It crystallized the holding of *Athas* as follows, *id.* at 676, 650 A.2d at 280: "Only if the supervisor directs a negligent act toward a particular fellow employee will the supervisor be held personally liable. Thus, in order for a supervisory coemployee to avoid liability under the Act, at the time of the accident, the supervisor must be: (1) performing a nondelegable duty of the employer; and (2) acting within the course of his or her employment."

The court determined that the foreman met "both prongs of the test articulated in *Athas* and, as such" was "entitled to the immunity of his employer." *Id.* at 678, 650 A.2d at 281. In particular, the court determined that the foreman was acting as a "supervisor" when he "assigned" the worker "to operate the backhoe" and that his conduct occurred during the course of employment. *Id.* at 679, 650 A.2d at 282. Moreover, the court was of the view that the foreman "did not commit an affirmative direct act of negligence toward the [plaintiff]." *Id.* at 678, 650 A.2d at 281. It reasoned: "As foreman on the job site, the [foreman] was responsible for

discharging [the employer's] duty to provide the [plaintiff] with a safe place to work and to retain competent employees." *Id.*

Further, the court said, *id.* at 678–82, 650 A.2d at 281–83 (emphasis and alterations added):

There is no dispute that among the duties encompassed within that job description was the assignment of workers on site to perform tasks in furtherance of the completion of the project. That responsibility, in turn, involved ensuring that those workers have the ability to perform the tasks and, with regard to the other workers on site, to do so safely. These duties are required to be performed by the foreman in furtherance of his employer's responsibility to provide a safe workplace for its employees. Thus, the very act upon which the petitioner relies to establish a breach of duty owed to him—the [foreman's] assignment to [the backhoe operator] of the task of operating the backhoe—is one that was undertaken in fulfillment of a nondelegable duty the employer owed its employees. *See Ramey,* 874 F.2d at 952; *Crawford,* 240 N.W.2d at 167; *Kruse,* 213 N.W.2d at 67. Whether and, if so, how, the [foreman] performed the necessarily related acts of ascertaining [the backhoe operator's] ability to perform the task assigned competently and safely and providing adequate supervision address the quality of the [foreman]'s discharge of the employer's duty. *That he may have performed it negligently does not transform the duty from one owed the employer into one owed as a coemployee*; 'a supervisory coemployee who performs the nondelegable duty of the employer does not thereby assume a personal duty toward his fellow employees.' *Athas,* 300 Md. at 148, 476 A.2d at 718. By undertaking the managerial and personnel functions of his position, the [foreman] assumed an obligation to [the employer] only. *Id.* at 149, 476 A.2d at 718.

\*\*\*

Regardless of the factual merits of the negligent entrustment claim, notwithstanding that he committed the acts alleged—the [foreman] did in fact supply [the backhoe operator] with the backhoe and assign him to operate it—that conduct, including also directing [the backhoe operator] with regard to how to accomplish the assigned task, and inquiring as to [the backhoe operator's] experience in operating similar equipment, was undertaken by the [foreman] as a supervisor acting on behalf of his employer, in the performance of the employer's nondelegable duty. It was not an affirmative direct act of negligence committed against the petitioner. So viewed, it becomes clear that, at no point did the [foreman] 'doff' the cap of supervisor and 'don' the cap of a coemployee. *Athas,* 300 Md. at 144, 476 A.2d at 716 (quoting *Laffin v. Chemical Supply Co.,* 77 Wis.2d 353, 253 N.W.2d 51, 53 (1977)).

\*\*\*

[T]o the extent that the [foreman] should have been alerted, by his inquiry of [the backhoe operator], as to [his] inability safely and competently to operate the backhoe, he merely breached [the employer's] duty of providing the petitioner with

a safe place to work; he did not affirmatively, directly commit an act of negligence toward the petitioner, although, had [the backhoe operator] been injured, he may have done.

Accordingly, the *Hastings* Court concluded that the foreman "cannot be held personally liable" for his action in assigning the worker to use the backhoe that caused plaintiff's injury. *Id.* at 683, 650 A.2d at 284.

*Hayes*, 205 Md. App. 459, 45 A.3d 861, is also instructive. There, the plaintiff and the defendant were involved in an automobile accident in the parking lot of a BJ's Wholesale Club ("B.J.'s"). *Id.* at 461, 45 A.3d at 863. Plaintiff was an employee of BJ's and defendant was "his supervisor in the tire center." *Id.* But, at the time of the accident, the defendant "'was neither supervising nor directing'" the plaintiff because plaintiff's "'shift had ended for that particular day.'" *Id.* at 463, 45 A.3d at 863 (quoting Joint Statement of Facts). Defendant, "'while working,'" was in the process of moving a customer's vehicle "'from a parking space into the tire service center.'" *Id.* at 463, 45 A.3d at 864 (quoting Joint Statement of Facts). Plaintiff, who was "'proceeding through the same area of the parking lot in his own'" vehicle, "'collided with the vehicle operated by [defendant] . . .'" *Id.* (quoting Joint Statement of Facts).

Following the accident, plaintiff "signed a release agreement resolving any claims that he may have had against BJ's . . . arising from the accident." *Id.* at 461, 45 A.3d at 863. But, plaintiff sued his supervisor for negligence. *Id.* The trial court granted summary judgment to the defendant, concluding that he was immune from suit as a supervisor performing a nondelegable duty of the employer in the course of his employment. *Id.* at 462, 45 A.3d at 863.

On appeal, the defendant argued "that because he was a supervisor who was performing a specific job function in moving the customer's car, while he was on the job and at his place of employment, his duty to operate the customer's car in a safe manner was part of his employer's nondelegable duty to provide a safe workplace." *Id.* at 474, 45 A.3d at 870. The court disagreed.

It reasoned that "a supervisory co-employee performs his employer's nondelegable duty to provide a safe workplace where he delegates work assignments or supervises other employees in the performance of their assignments, but *not where he performs the assignments himself*." *Id.* (emphasis added).

The court explained that, by "performing the task himself, [defendant was] no longer acting in his role as a supervisor, but instead [defendant was] acting as a coemployee." *Id.* at 476, 45 A.3d at 871. And, "[a]s a coemployee, [defendant was] not performing his employer's duty to provide a safe workplace. Rather, as the driver of a motor vehicle, he owe[d] a personal duty of care to all other travelers, including [plaintiff]." *Id.* at 476, 45 A.3d at 871–72. Therefore, the supervisor was not entitled "to immunity from suit under the Workers' Compensation Statute." *Id.* at 477, 45 A.3d at 872.

**B.**

The duties that plaintiff attributes to McAllister and Milligan in his claims for negligence and negligent hiring, training, and supervision are almost identical. In the negligence claim, plaintiff alleges that Milligan and McAllister had duties to "ensure the safe operation of forklifts and other heavy industrial equipment" at the Plant; "educat[e] employees on how to be safe when working in the warehouse"; ensure "that travel lanes for pedestrians and the power industrial trucks are clearly marked"; "train[] and supervis[e] and [enforce rules on] forklift operator, Butcher"; and "enforc[e] the use of horns at all locations where pedestrians may [sic] standing or walking[.]" ECF 4, ¶¶ 24, 25. In regard to the claim for negligent hiring, training, and supervision, plaintiff claims that Milligan and McAllister's duties included a "duty to hire, train and supervise the propane powered industrial truck operators, including forklift and pallet jack operators"; a duty

"to establish safety rules for operators and pedestrians to follow"; and "a duty to supervise and enforce the safety rules[.]" *Id.* ¶¶ 32, 33.

It is unassailable that in Maryland an employer owes a nondelegable duty to provide a safe workplace for its employees. *See, e.g., Beckwitt*, 477 Md. at 438, 270 A.3d at 330. This duty includes the duty to provide routine work assignments and supervision, retain competent, non-violent employees, issue safe equipment, furnish proper tools and machinery, and control employees. *Hastings*, 336 Md. at 677, 650 A.2d at 281 (citing cases); *see Hayes,* 205 Md. App. at 472, 45 A.3d at 869 ("[A] supervisory coemployee is not liable for injuries to a covered employee when the supervisor is delegating work assignments or supervising others in the performance of these assignments because such conduct is an aspect of the employer's nondelegable duty to provide a safe place to work."); *Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946, 952 (4th Cir. 1989) ("[R]outine work assignments and supervision are aspects of the nondelegable duty of providing employees a safe place to work.").

Scrutiny of the Amended Complaint reveals that every act in which defendants allegedly engaged as supervisors pertains to Pepsi's duty to maintain the safety of the Plant. The duties that plaintiff attributes to Milligan and McAllister to support his claims for negligence and negligent hiring, training, and supervision clearly fall within the nondelegable duties of an employer. Unlike the supervisor in *Hayes,* for example, neither Milligan nor McAllister performed the task that caused plaintiff's injury, *i.e.*, driving the forklift. *See Hayes,* 205 Md. App. at 476, 45 A.3d at 871.

As noted, plaintiff alleges that, in operating the forklift, Butcher was "traveling too fast," failed to stop at an intersection, and failed to "sound the horn." ECF 4, ¶ 21. Plaintiff advances no allegations that either Milligan or McAllister engaged in a direct act of negligence as to Butcher's operation of the equipment. Butcher may have violated the Plant's rule barring

"operations" during break time period "without permission from the warehouse supervisor [*i.e.*, plaintiff], McAllister, the Warehouse Manager or Milligan, the Production/Maintenance Manager." *Id.* ¶ 16.  But, the suit is devoid of any allegation that Butcher's operation of the forklift came at the direction of or with permission of McAllister or Milligan. [13]

Even if plaintiff had made such an allegation, however, this would not be sufficient to vitiate defendants' statutory immunity as supervisory coemployees.  Such an allegation would amount to a claim that Milligan and McAllister breached their duties to maintain a safe workplace. *See, e.g., id.* ¶¶ 25, 28.  But, defendants' failure to provide a safe workplace is a breach of the employer's nondelegable responsibility.

*Hastings,* 556 Md. 663, 650 A.2d 274, discussed earlier, is instructive.  There, the foreman assigned a worker with little experience with a backhoe to use the equipment, which ultimately injured plaintiff. *Id.* at 669–70, 650 A.2d at 277.  As noted, the court determined that the foreman was not personally liable because, in directing the worker to use the backhoe, the foreman was performing the nondelegable duty of the employer. *Id.* at 682–83, 650 A.2d at 284.  Because the foreman's actions were not regarded as "an affirmative direct act of negligence," the foreman was immune from liability. *Id.* at 681–82, 650 A.2d at 283.

Similarly, even assuming that Milligan and/or McAllister authorized Butcher to use the forklift during break time, this would constitute a breach of the duty to maintain the safety of the

---

[13] As to plaintiff's claim that defendants "authorized and permitted" operation of forklifts during the break period (ECF 25-1 at 9), defendants argue that "[n]o such allegation" exists in the Amended Complaint.  ECF 28 at 3 n.1.  Indeed, this specific allegation is not in the Amended Complaint. *See* ECF 4.  However, a plaintiff need not include every factual detail in a complaint to satisfy Rule 8(a)(2). *See Twombly,* 550 U.S. at 555. Rather, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Plant for Pepsi's employees. Such an action would not amount to a direct act of negligence by defendants as to plaintiff.

Rule 12(b)(6) requires Williams to allege facts that, if proven, would establish that defendants engaged in a "direct act of negligence toward [plaintiff]." *See Athas,* 300 Md. at 149, 476 A.2d at 718. He has failed to do so. The facts he alleges do not defeat defendants' immunity from liability. Because the Amended Complaint is legally deficient, it does not survive the Rule 12(b)(6) motion.

## C.

In the event that the Court concludes that the allegations are deficient to state a claim, plaintiff "seeks an opportunity to conduct discovery to establish that the Defendants' conduct were [sic] not non-delegable duties of the employer and therefore not subject to immunity under Maryland's Workers' Compensation Act." ECF 25 at 1–2. He asserts: "Whether Milligan and McAllister acted in a general supervisory position on behalf of the employer or engaged in affirmative, personally negligent conduct, is a fact intensive inquiry." ECF 25-1 at 10. Plaintiff adds that "dismissal is inappropriate without Plaintiff having an opportunity to conduct discovery." *Id.* at 11. Moreover, plaintiff claims, without citing any supporting cases, that "[c]ourts repeatedly deny 12(b)(6) motions because determining whether the affirmative-act exception applies requires discovery." *Id.* at 10.

Defendants do not address plaintiff's request for discovery in their Reply. *See* ECF 28.

"The Federal Rules of Civil Procedure contemplate the use of discovery to round out the claims set forth in the complaint." *Berenyi, Inc. v. Nucor Corp. by & through Berkeley Div.,* DCN-20-03170, 2022 WL 2719820, at *3 n.3 (D.S.C. July 13, 2022). Under Fed. R. Civ. P. 11, "the factual inquiry necessary to file a complaint is generally satisfied if all of the information which can be obtained prior to suit supports the allegations made, even though further facts must

- 34 -

be obtained through discovery to finally prove the claim." *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990).

Notably, "[t]he need for discovery to complete the factual basis for alleged claims is not an excuse to allege claims with no factual basis." *Id*. Indeed, although "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted . . . the Court need not permit even limited discovery . . . should it conclude that such discovery will be a fishing expedition." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 403 (4th Cir. 2003) (discussing the court's discretion in granting discovery to gather information in the context of personal jurisdiction) (cleaned up) (internal quotation marks and citation omitted).

Here, plaintiff contends: "Discovery is necessary to determine what safety rules the Defendants personally created, what rules they personally enforced or failed to enforce, who controlled forklift operations during breaks, who allowed the forklifts to operate during the quiet time of breaks, what operational decisions they were responsible to establish, how Defendants personally trained, supervised and directed Butcher's conduct on the date of the incident, and whether the Defendants violated their duties outside of generally keeping a safe workplace." ECF 25 at 10–11.

The Court is mindful that, ordinarily, when a suit is filed, discovery has not yet occurred and a plaintiff is unlikely to know all relevant facts in a given case. But, the facts that plaintiff seeks to uncover through discovery, such as how defendants supervised Butcher, what safety rules defendants implemented, how they trained Butcher, what rules they chose not to enforce, and whether they allowed the use of forklifts during the designated break period, all are inextricably woven with the duty of Pepsi to provide a safe workplace. *See* ECF 25-1 at 10–11. Facts showing

that Milligan or McAllister breached their respective duties to keep the Plant safe will not provide a basis for Williams to bring suit against either defendant.

The conduct that led to plaintiff's injury, as alleged by Williams, was Butcher's operation of the forklift. And, as explained, even if discovery reveals that Milligan and McAllister authorized Butcher's use of the forklift during break time, or failed to rectify transportation or other workplace hazards, such as by installing mirrors, warning lights, or marking traffic lanes, such omissions or failures to act would not be sufficient to deprive them of immunity from liability.

In sum, plaintiff has not alleged any facts to support a claim that defendants "violated their duties outside of generally keeping a safe workplace." *See id.* at 11. Therefore, granting plaintiff's request for discovery would do nothing more than allow plaintiff to pursue a fishing expedition.

Accordingly, I shall deny plaintiff's request for limited discovery.

## VI.    Conclusion

For the foregoing reasons, plaintiff's claims against McAllister and Milligan are subject to dismissal. Therefore, I shall grant the Motion.

An Order follows.


Date: April 21, 2026                                    _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge

- 36 -